SANBORN (CHASE v.). See Case No. 2,628.

## Case No. 12,291.

### SANBORN et al. v. STETSON.

[2 Story, 481.] [1]

Circuit Court, D. Massachusetts. Oct. Term, 1843.

ACTION ON CASE — CONTRACT—FRAUDULENT MISREPRESENTATIONS—STALENESS OF CLAIM.

1. The plaintiffs brought an action against the defendant for fraudulent misrepresentations in a sale of lands by the defendant to the plaintiffs. It appeared, that, between the time of the sale in 1835 and the time when this suit was brought in 1841, the plaintiffs had paid the purchase-money, without objection; that they had sold great quantities of the land, and that the value of the lands had greatly diminished. The defendant did not pretend to be well acquainted with the township, or to have explored it, but expressly told the plaintiff's agent, Chamberlain, to examine for himself. Chamberlain did make an examination, and gave his estimate to the plaintiffs, being 51,000,000 of feet of timber. At the request of the plaintiffs, another exploration was made in 1836 of the whole lands, by Messrs. Farnham, who estimated the pine timber at 18,480,000 feet, and the hemlock at 27,704,000 feet. But the plaintiffs did not apply to rescind the contract before this suit. The first count charged a misrepresentation, that the defendant had not cut, nor permitted any one to cut, any pine timber from the land; but it was held, that this representation was not proved to be fraudulent, or material under the circumstances. The second count charged, that the defendant showed tracts, as samples of the whole land, which were of superior value, and had more timber on them than the rest. But this count was not sustained by the evidence. The third count charged a fraudulent exhibition of a dotted map as a true plan of the pine timber on the land. But it appeared that the map only represented the position of the timber on the lot, and not its quantity; and as the quantity was the only material inquiry, and no fraudulent intent was proved, this count was not sustained. The fourth count charged a fraudulent representation, that the lots contained 50,000,000 of feet of timber, whereas they only contained about 20,000,000; but it appeared, that this representation was made by Chamberlain, the plaintiff's agent, and was merely his estimate, and no fraudulent intent was proved. The fifth count charged false representations as to the quantity of timber on certain lots. But it appeared, that these representations were made by the agents of the plaintiff, and were his estimate. On the whole case, it was held, that the plaintiffs were not entitled to recover.

[Cited in Mason v. Crosby, Case No. 9,234; Tufts v. Tufts, Id. 14,233.]

[Cited in Port v. Williams, 6 Ind. 222. Cited in brief in Watts v. Cummins, 59 Pa. St. 88.]

2. This action was brought only two days before the statute of limitations would have barred the suit; but it was held, that although in a bill in equity for relief, or to rescind the contract, the staleness of the claim, and the want of diligence of the plaintiffs, and the lapse of time, would have rendered the claim unmaintainable; yet that, at law, the plaintiffs were not barred thereby.

[Cited in Warner v. Daniels, Case No. 17,181; Hough v. Richardson, Id. 6,722.]

This was an action on the case [by Moses Sanborn, Joseph L. Cilley, and James Bell

[1] [Reported by William W. Story, Esq.]

against Amasa Stetson] for fraudulent misrepresentations, alleged to be made by the defendant to the plaintiffs upon the sale of certain lots of land in the town of Carmel, in Maine, owned by the defendant, and sold for the sum of $61,903.37. The cause came on to be tried by a jury at the October term of the circuit court, 1842; but, in consequence of the illness of Mr. Justice Story, it was taken from the jury before the trial was finished. It was afterwards, by the agreement of the parties, argued at this term to the court, without any jury, and the court were to render such a judgment as it should deem right upon all the proofs in the cause, and the law arising thereon.

Charles Sumner and Joseph Bell, for plaintiffs.

J. Rogers and R. Choate, for defendant.

STORY, Circuit Justice (orally). This is an action on the case for fraudulent representations in the sale of lands by the defendant to the plaintiffs. The sale was made on 3d July, 1835, of lots 3, 5, 8, 11, 13, 15; of gores of lots 27, 17, 18, 21, 22, 37, 38; of the west half of lots 42, 47, 48, 54, 58 (excepting 10 acres); of lots 59, 60, (excepting 100 acres,) 62, 65, 66, 68, and 70, in the township of Carmel, containing in whole, 7,282¾ acres. The lots were sold for $61,903.37, paid and secured to be paid to the defendant.

There are various counts in the declaration: (1) For a false representation, that defendant had not cut any pine timber from said lands, nor given permission that any should be cut therefrom. (2) For a fraudulent showing by the defendant, on the sale of the tracts, of some of superior value and more timber, as samples of the whole, and thereby affirming, that all were of equal value and had an equal quantity of timber. (3) For a fraudulent exhibition of a map on sale as a true plan, and as a representation of the pine timber thereon, and thereby affirming, that the tracts were covered with pine timber on the parts and to the extent covered by the plan. (4) For a fraudulent representation. that the pine timber on the lots was about 50 millions of feet, whereas the quantity did not exceed 20 millions of feet. (5) For a false representation, that there were on lots 58, 59, 60, 47 and 48, about 12 millions of feet of pine timber; on 11, about 3 millions of feet; on 62, about 2 millions of feet; on 70, about 2 millions of feet; whereas there was not on 58, 59, 60, 47 and 48, over 4 millions of feet; on 62, not over 1 million of feet; on 70, not over 800,000 feet. (6) The sixth count embodies the four first, and contains no new charges.

The whole case, therefore, turns upon allegations of positive fraud, and positive misrepresentation, with a fraudulent intent. The deed of the land was made to the plaintiffs on 3d of July, 1835. The suit was brought on July 1st, 1841, two days only before the statute of limitations would operate upon the case. This is not, per se, an objection to the suit. But it must operate in point of evidence upon the case; for lapse of time necessarily renders all testimony more obscure, and less easy of precise ascertainment, from the frailness of memory, from subsequent changes of opinion, or from other circumstances. In the intermediate time between the time of the sale and that of the suit, the plaintiffs, without objection, paid large amounts of the purchase-money, and took up their notes at maturity. Indeed, the whole purchase-money, amounting to $61,903.37, has been paid, and the last payment and discharge of the mortgage were on the 18th of June, 1839. The plaintiffs, between the 1st of July, 1836, and the 1st of July, 1841, sold large quantities of the land, and of timber on the land, to different purchasers. And according to their own statement, on the 1st of July, 1841 (the day of the commencement of the suit,) they had sold all the land except 4,387¼ acres, on which they estimate, that there was pine timber to the amount of 1,742,000 feet. These facts are exceedingly important. The plaintiffs had, during these five years, ample opportunity to explore the lands, to ascertain the amount of the timber thereon, and to obtain a full knowledge of all the facts, relative to the asserted fraud, upon the land. They might have refused to pay the purchase-money upon the ground of fraud; and if there was any fraud, they might in equity, if not at law, have rescinded the contract. Why did they pay the purchase-money without objection? Why did they continue to sell parcels of the land from July, 1836, to July, 1841, if the fraud was either known or suspected by them? Are not these facts strong evidence of their acquiescence in the bona fides of the sale, if not of their satisfaction with the bargain?

It is also material to consider certain other facts. The value of the lands has been greatly diminished, and the price has greatly fallen, between 1835 and 1841. The price in 1835 may have been, and probably was, at an inflated and exorbitant rate. It may now be greatly below its true value, from general causes of depression, as it probably was at some of the intermediate periods between 1835 and 1841. If this were a bill in equity to rescind the contract, or for relief, it would clearly be unmaintainable, upon the ground of the lapse of time, and staleness of the claim, and the want of diligence in the plaintiffs, with the means of knowledge of all the facts in their power, recentis factis. Upon this point, it is fit to refer to the case of Vigers v. Pike, 8 Clark & F. 650. But at law the case is different. The plaintiffs have a right to stand upon their legal rights, and are not barred if a case of fraud be made out. But then the onus probandi is on the

plaintiffs. Fraud is not presumed. It must at law be clearly and fully established. Suspicion is not enough. Doubtful circumstances are not enough. The balance of the testimony is not to be nicely weighed.

In order, then, to establish the plaintiffs' case, it is necessary to show: (1) That fraud was intended by the defendant. (2) That it was consummated. (3) The purchase must be shown to have been upon the faith of representations of the defendant, and not solely upon statements of their agent, Chamberlain, or of other persons. If the defendant attempted a fraud, and the plaintiffs purchased, relying upon their own judgment, or that of Chamberlain, the suit is not maintainable. Some things are clear. (1) The defendant did not pretend to be well acquainted with the township, or to have explored it. (2) He expressly told the plaintiffs' agent (Chamberlain), to examine and explore for himself. That agent intended to be a co-purchaser, as he himself has stated. (3) The plaintiffs' agent (Chamberlain), did explore and examine the lands for himself. (4) It is admitted, that the plaintiffs' agent did communicate his estimate to the plaintiffs (at 51 millions of feet of timber), and that he was then perfectly satisfied with his own exploration, and with the purchase, as a good bargain. His letter of the 24th of June, 1835, shows this. Nay, the plaintiffs' agent continued to express a favorable opinion of the purchase for years afterwards, upon fuller examination; and, as some of the testimony states, even down to 1841. Another important fact is, that an exploration of the whole lands was made by the Messrs. Farnham, in March and April, 1836, for and at the request of the plaintiffs. Their estimate made to the plaintiffs gave the pine timber at 18,480,000 feet only. They also estimated the hemlock at 27,704,000 feet. Now, this estimate must be taken to have been adopted by the plaintiffs as a true and fair one in 1836. Indeed, the fourth count of the declaration seems to proceed upon the estimate of pine timber on the land as not exceeding 20 millions of feet. Why, then, did not the plaintiffs, in 1836, apply to rescind the contract, or repudiate the purchase, or refuse to pay their notes, or give notice to the defendant? They knew the full exigency of their case at that time. There is no pretence of any new information, or of any new facts brought to their knowledge, as to the original statements of the defendant, since that period. If any fraud existed, it was then known to them. They were put upon inquiry. They did not then choose to act upon the ground of fraud. Is not this very strong evidence to show, that they did not then believe in any fraud? Or, that there had been any misrepresentation by the defendant? Does it not prove, that they purchased upon the exploration of their own agent, and not upon the supposed statements of the defendant? Or, that they meant

to waive all future inquiries into the subject, because they had sustained no damages? These are general preliminary considerations, applicable in a great measure to the whole case, in all its various aspects.

Let us now proceed to consider the particular counts in the declaration. 1. The count is in effect that, upon the sale, the defendant falsely and fraudulently represented, that he had not cut any pine timber upon any of the lands, and had not given any permits to do so. This representation of the defendant certainly was not true; and it is admitted not to be true as to lot No. 58, of the twenty-four lots sold. But I am not satisfied from the evidence, that the defendant ever allowed any timber to be cut upon any other of the lots sold to the plaintiffs. It is said, that permits had been given to cut timber on lots 27 and No. 70. But I am not satisfied, that there is any sufficient proof thereof; and the weight of the evidence appears to me the other way. As to lot 58, it appears, that in 1822 the defendant gave two permits to cut timber on that lot: one permit for $458, and another for $125, amounting in all to the sum of $583. As to lot No. 70, Isaac Boynton, in his second deposition, says, that the trees, which were down, were cut down (he supposed) by trespassers. The other evidence does not, I think, overcome the presumption, that this was the actual state of the facts. As to lot No. 27, it was burned over 20 years before 1842; and the defendant had purchased of the commonwealth, and had owned all the lots sold about 30 years. Now, two considerations are, upon this posture of the evidence, as to this count, material: (1) Did the defendant fraudulently misrepresent the fact, that he had never given permits to cut pine timber on any of the lots, knowing the statement to be false? (See Foster v. Charles, 6 Bing. 396, 7 Bing. 105.) Or, had he simply forgotten the single instance on a single lot (lot No. 58), where permits had been granted 30 years before the sale to the plaintiffs, and the representation made by himself? My opinion is, that, taking all the circumstances together, there is no reason to believe, that the defendant actually meant to misrepresent the real facts; but that he, after such a lapse of time, had totally forgotten the whole transaction. (2) Had the representation, whether it was true or false, any influence on the purchase of the plaintiffs of the 24 lots for $61,903.37, the value of the timber actually cut not exceeding $600? My opinion is, that it had no influence on the bargain, and that the purchase would not have been given up, or varied, if the facts had been fully made known. Besides is it not a fair presumption, taking all the evidence in the case, that the statement made by the defendant was, as to his general practice only; and that this was all that he intended to represent? If so, it was substantially true, and it could in no manner affect

the bona fides, or the validity of the sale. Under all the circumstances, I think that the first count is not supported.

As to the second count, it depends entirely upon the fact: (1) Whether Messrs. A. Stetson, jr., and Garland, or either of them, were the general agents of the defendant in this transaction, so that their declarations should and ought to bind him; for there is no proof that the defendant personally made any such declarations as this count supposes. (2) Whether, if they were the general agents of the defendant, they did in fact make any such declarations, as the count supposes. (3) Whether, if the declarations were made, they were fraudulently made. Both Stetson, jr., and Garland deny that they were general agents, or any agents at all, except to show the location and boundaries of the lots; or that they had any instructions. They assert, that they made no false or fraudulent declarations, and that they never professed to act as general agents. They also swear, that the exploration made by them was fair. This count, therefore, upon the evidence, involves various considerations. (1) The fairness of the exploration. (2) The statements of Stetson and Garland, as to the unexplored lots. (3) The matters of opinion expressed by them. A. Stetson and Garland both state, that they acted fairly, and gave their real opinions; that they made no attempts to mislead; that Chamberlain voluntarily discontinued the exploration; that the exploration, as far as made, was entirely fair. There is now evidence both ways as to the timber on the unexplored lots. The plaintiffs say, that it is less than that of the explored lots. The defendant says, that it is more, or, at least, equal to that of the explored lots. There is a conflict of evidence on the point, and under such circumstances the onus probandi is on the plaintiffs. The case is not made out on their part; and, therefore, this second count is not sustained. The direct evidence of Chamberlain is not sufficient to overturn the counter statements of the other witnesses.

As to the 3d count. This count relies on the allegation, that the map or plan was shown to the plaintiffs "as a true map or plan of the said lots, and as a true representation of the pine timber standing on the same; and that a large quantity of timber was marked and indicated thereupon as pine timber standing upon the said tracts, and that the defendant falsely and fraudulently represented and affirmed, that the said tracts of land were covered with pine timber in the parts and to the extent indicated in the said map or plan;" all of which representations were false. The original map shown by the defendant to the plaintiffs is now before us. There are dotted places, as for timber, on it. The map is small, and not an original plan by a surveyor. There is no pretence, that the map indicates the quantity of pine timber on the lots. But it is said, that it does indicate the location or position of the pine timber on the lots. Be it

so. But in the present suit, the quantity of timber is the material inquiry, and not the location of the timber. It must have been so understood by both parties, when the map was shown, and the sale made. Suppose the location was not correct, yet if a full proportion in quantity was found on the lot, there would be no pretence to say, that the mistake in the representation on the map would avoid the sale. But it is clear, that the defendant did not know much personally about the lands. He said, at the time, that he had not personal knowledge of the lands, and that he had not explored the lands. He told Bell, and Chamberlain also, that they must examine for themselves. Chamberlain did examine for himself. (Here the judge commented on the testimony in the case of Chamberlain and Messrs. Stetson, jr., and Ewer on this point.) Now, under all the circumstances, what effect ought such a map necessarily to produce upon the mind of any purchaser? What effect did it, in fact, produce on these purchasers? Were these purchasers governed by the map, or by Chamberlain's exploration? Chamberlain says, that the defendant did not make any representations of the quantity of pine or other timber on the Carmel lands. It must be proved, that the defendant knew that the map was false, as to the location of the pine timber on the lots; for the allegation is, that he falsely represented it to be true. The map is too vague and indefinite, as evidence, to establish any fraud as to the quantity, or as to the location of the pine timber. The map was in the plaintiffs' possession at all times. Why did they not, for six years after the purchase, ascertain its exactness, and whether it was false; or if false, whether it was fraudulently false?

As to the 4th count. The fourth count alleges as its foundation, that the defendant made a false affirmation that there were fifty millions of feet of pine timber on the lots. Now, the material part of the evidence to support this count is Chamberlain's testimony, that on his return to Bangor, he showed the defendant his estimates of the pine timber on the lots, and the defendant said "that, as far as he had knowledge, they were correct; but he had gone over but a few of his lands. Persons seldom estimate timber lands too high." Chamberlain's own estimate made the amount over fifty millions of feet of pine timber. How does this statement of the defendant, as testified to by Chamberlain, even if his testimony be true, support this count? It is one thing for the party to affirm a thing to be positively so, and quite another thing to assert, that, as far as the party has knowledge, it is so. Chamberlain, at that time, relied upon his own personal exploration, and affirmed, that there was as much pine timber, as his own estimate stated, and that the statement was made bona fide. Yet, now, it is said to be a fraud in the defendant, that he came to the same conclusion. Which had the best means of knowledge, Chamberlain or

the defendant? Chamberlain says, that he does not recollect, that he told the plaintiffs of the defendant's estimate of the lands, or what he said as to that; but he only communicated the map, and his own estimate, and the terms of sale of the defendant. What influence, then, could the defendant's remarks have had upon the purchase by the plaintiffs? If they never knew, that they were made, the plaintiffs could not be deceived by them. There seems to me, no ground, therefore, to sustain the fourth count.

As to the 5th count. The fifth count relies upon the false representation of the defendant, as to the quantity of timber on certain lots. This is endeavored to be maintained solely upon the supposed statement of the defendant's agents, or upon the conversation with Chamberlain, when his estimate was shown to the defendant. The same considerations apply here as apply to the second count, and with the same force and stress.

The 6th count merely embodies the others; and therefore requires no distinct consideration.

I have thus finished this brief review of the several counts, and have no difficulty in saying, that none of them are, in my judgment, sustained by the evidence. Hitherto nothing has been said by me as to the comparative credibility of the witnesses. The plaintiffs' case stands wholly, or mainly, upon the credibility of Chamberlain and Coffin. Chamberlain stands in a peculiar situation. He was a co-purchaser in effect. He was the agent, who made the bargain. His testimony is given after several years have elapsed, and it is of mere oral conversations and statements made by the other parties, after great changes of opinion on the part of the plaintiffs as to the value of the property, and great changes in its market value. Chamberlain, until a recent period, constantly affirmed, that the bargain was a good one. He is contradicted in many things stated by him, by Garland and Stetson, jr. Under all the circumstances, —the great lapse of time, the intermediate acts and acquiescence of the plaintiffs, the difficulty of giving entire credit to witnesses, testifying to conversations and occurrences several years ago, and the conflict and opposition of the evidence on many important particulars, I should not feel myself justified in saying, that there was a sufficient ground, on which the court ought to pronounce a judgment for the plaintiffs. I am well satisfied, that it is my duty to declare, that the plaintiffs have not made out their case, and that judgment ought to pass for the defendant.

Judgment for the defendant.